UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:11-cr-135-JAW |
| | ) | |
| SIMON KIHUGU, | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON MOTION TO SUPPRESS

Simon Kihugu, charged in a one-count indictment with conspiracy to participate in a sham marriage for the purpose of defrauding the United States, in violation of 18 U.S.C. § 371, moves to suppress statements that he made while in custody on September 27, 2011. An evidentiary hearing was held before me on January 13, 2012, at which the defendant appeared with counsel. The government presented one witness and four exhibits, all of which were admitted without objection. The defendant offered no witnesses and no exhibits. After both sides rested, counsel argued orally. I now recommend that the court adopt the following proposed findings of fact and deny the motion.

### I. Proposed Findings of Fact

Loren Thresher, a special agent with the Department of Homeland Security Investigations, assigned to Immigration and Customs Enforcement ("ICE"), developed information that the defendant had entered into a sham marriage with Heather Dugas on April 28, 2003. An indictment issued on August 17, 2011, and on September 27, 2011, the defendant was arrested in Lowell, Massachusetts, pursuant to an arrest warrant that was issued on September 26, 2011. Docket No. 8.

At approximately 6:15 a.m. on September 27, 2011, Thresher and three other agents arrived at the defendant's residence in Lowell. Three of these agents went to the door of the defendant's apartment; the fourth agent entered the apartment later, after the defendant was in custody. All of the agents were dressed in civilian clothes, with ICE jackets. All were carrying sidearms, which were probably visible to the defendant but were never drawn. The agents wanted to arrest the defendant before he left for work.

An agent other than Thresher knocked, and the defendant opened the door within one to two minutes. He was dressed in blue scrubs and was not wearing shoes. He was carrying a Tupperware container of food. He identified himself and complied with a request that he step out into the hallway. The agents performed a quick search of the apartment for other occupants and a second search, directed by the defendant, for documents in his bedroom.

The defendant was handcuffed and told that he was under arrest. He was transported to Boston in a full-size, four-door sedan; he was in handcuffs and leg irons with a belly chain. During the transport Thresher sat in the back seat with the defendant. There was barely enough room for a third person in the back seat, although no one tried to join them. Before getting into the car, the defendant and Thresher had spoken about the fact that the defendant had run marathons.

During the trip, the defendant initiated a conversation about directions to Boston. He made several telephone calls, two of which were to his employer. Also during the trip, Thresher explained the basis of the charge upon which the defendant had been arrested and the process that had led to the warrant for the defendant's arrest. Thresher told the defendant that he would likely be going to a criminal court that day, would get an attorney, and would likely be released with conditions. Thresher also told him that a deportation proceeding would likely be "down the

road." He told the defendant that cooperation would benefit the defendant as it would demonstrate acceptance of responsibility in both the criminal and the deportation proceedings.

Ten to 15 minutes after they left Lowell, Thresher gave the defendant his *Miranda* warnings.[1] There was heavy traffic, the car radio was off, the windows were up, and the air conditioning was not turned on. After the defendant signed a waiver of these rights that is Government Exhibit 3, Thresher asked the defendant to explain his relationship with Dugas. The defendant said, *inter* alia, that the marriage was in good faith. He went into considerable detail about the relationship. When the defendant finished his response, Thresher filled out the personal history report that is Government Exhibit 4, asking the defendant for some of the information necessary to complete the form.

After the form was completed, the defendant acknowledged that he knew that lying to a federal agent is a crime. The defendant then confirmed his earlier statement that Faith Ngigi, the mother of his children, was not at his wedding to Dugas. Thresher told the defendant that he knew that the defendant was lying, and showed the defendant the wedding certificate with Ngigi's signature as a witness. The defendant then admitted that he had lied. At this point, the car arrived at the Boston office of Homeland Security Investigations.

Approximately 15 minutes later, inside the holding room of this office, Thresher attempted to continue his interview. The defendant declined to participate, saying that he would stick with the answers that he had already provided. Thresher stopped the interview, and any subsequent conversation with the defendant was incidental.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## II. Discussion

Counsel for the defendant contended in oral argument that the defendant's statements to Thresher were psychologically coerced, when "the government showed up with four armed men who immediately put [the defendant] under arrest," then searched his apartment, then chose to transport him "in a car that could only contain two full-grown men," one of whom was an agent with a holstered weapon on the hip immediately adjacent to the defendant, and the agents knew that the defendant was not born or raised in this country.[2] Counsel asserted that the defendant was "overwhelmed by the presence of a badged law enforcement agent carrying a weapon and interrogating him," and that the small back seat area imposed "greater pressures on [the defendant's] mind" than would questioning him in a small room.

The defendant offers no authority to support these arguments. He correctly cites case law to the effect that the burden to show that his statements were voluntary is on the government, Defendant's Pretrial Motion to Suppress Statements, Admissions, and Answers (Docket No. 21), but nothing to support his specific contentions. The evidence offered by the government at the hearing easily meets its evidentiary burden.

Nothing in the available evidence may reasonably be construed to support a conclusion that the defendant's statements were made because his will to refuse to answer questions was overborne. *See Colorado v. Connelly*, 479 U.S. 157, 166-67 (1986). There is no evidence of threats or prolonged interrogation. The uncontroverted evidence is that the defendant understood his rights and competently waived them. A reasonable man in handcuffs and leg irons would not see a holstered gun as a threat, however close the holster might come to him as a result of the physical limitations of the back seat of a full-size car. A law enforcement agent cannot be

---

[2] The defendant offered no evidence to demonstrate how his experiences in Kenya might predispose him to see coercion from law enforcement agents where none existed, and that Thresher, or any of the other agents involved, knew of this predisposition so that he or they could take advantage of it.

required, as a matter of law, not to conduct questioning in any motor vehicle equal to or smaller than a full-size sedan. Nor can a brief, consented-to search of a defendant's apartment reasonably be construed to exert psychological pressure on a defendant to confess.[3] If placing a defendant under arrest, or wearing holstered guns while making an arrest, renders inadmissible any subsequent statements made by the defendant as a matter of law, regardless of the care taken by a law enforcement officer to determine that the defendant understands and knowingly waives his rights, and the presence of a signed statement to that effect, then all defendants' statements are immunized from the moment of arrest, and no questioning of such individuals would be possible at all. Federal law clearly does not impose such strictures upon law enforcement personnel.

It is significant in this case that the defendant, upon arrival in Boston, refused to answer any further questions from Thresher. This demonstrates that his will was not overborne and that he understood his rights. It does not demonstrate, as the defendant would have it, that as a matter of law the back seat of a full-size car is inherently coercive, while a holding room in a federal law enforcement facility is not.

### III. Conclusion

For the foregoing reasons, I recommend that the proposed findings of fact be adopted and the motion to suppress be **DENIED**.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,***

---

[3] From all that appears, the defendant did not confess to the crime with which he is charged, but only admitted that he had lied to Thresher.

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

**Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.**

Dated this 23rd day of January, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge